# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-00451-KDB

| | |
|---|---|
| **CEDRIC E. DAMERON,** | |
| **Plaintiff,** | |
| v. | **ORDER** |
| **ANDREW M. SAUL,** Commissioner, Social Security Administration,[1] | |
| **Defendant.** | |

**THIS MATTER** is before the Court on Plaintiff Cedric E. Dameron's Motion for Summary Judgment (Doc. No. 12) and Defendant's Motion for Summary Judgment (Doc. No. 15), as well as the parties' briefs and exhibits. Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision denying Dameron's application for Supplemental Security Income ("SSI").

Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, the Court finds that Defendant's decision to deny Dameron's Social Security benefits does not sufficiently permit the Court to determine if the decision is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment is **GRANTED** in part; Defendant's Motion for Summary Judgment is **DENIED**; and the Commissioner's decision is **VACATED** and **REMANDED** for further proceedings consistent with this Order.

---

[1] Andrew M. Saul is now the Commissioner of Social Security and is substituted as a party pursuant to Fed. R. Civ. P. 25(d).

1

# I. BACKGROUND

Dameron applied for disability benefits on May 13, 2013, alleging disability beginning May 13, 2013. (Tr. 20, 185). [2] His application was denied at the initial and reconsideration levels. (Tr. 20, 101, 117). After conducting a hearing on March 9, 2017, Administrative Law Judge Theresa R. Jenkins ("ALJ") denied his application in a decision dated July 3, 2017. (Tr. 20, 34). The Appeals Council denied his request for review. (Tr. 1-6). The ALJ's decision now stands as the final decision of the Commissioner, and Dameron has requested judicial review.

For the reasons stated below, the Court reverses and remands the Commissioner's decision.

# II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration to determine if Dameron was disabled under the law during the relevant period. [3] At step one, the ALJ found that Dameron had not engaged in substantial gainful activity since May 13, 2013. (Tr. 22, Finding 1). At step two, the ALJ found that Dameron had the following severe impairments: anxiety with panic, depression, bipolar disorder with psychotic features, and post-traumatic stress disorder (PTSD). (Tr. 22, Finding 2). The ALJ considered

---

[2] Citations to the administrative record filed by the Commissioner are designated as "Tr."

[3] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite his limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

Dameron's impairments under listings in 20 CFR Part 404, Subpart P, Appendix 1 at step three and found that they did not meet or medically equal any listing. (Tr. 22, Finding 3).

At step four, the ALJ found that Dameron has the residual functional capacity ("RFC") to perform the full range of work at all exertional levels but imposed the following non-exertional limitations:

> [T]he claimant should avoid workplace hazards, such as ladders, ropes, scaffolds, unprotected heights, and machinery with dangerous parts; is able to follow short, simple instructions (not detailed), and perform routine tasks, but should have no work requiring a production rate or demand pace. The claimant is able to sustain attention and concentration for two hours at a time; frequently, but not continuously, interact with coworkers and supervisors, but should have no public contact or interactions. The claimant should avoid work environments dealing with crisis situations, complex decision making, or constant changes in a routine setting.

(Tr. 24). The ALJ further found that while Dameron had no past relevant work, considering his age, education, work experience, and RFC, he can perform other jobs that exist in significant number in the national economy. (Tr. 33, Finding 5 & Finding 9). The vocational expert (VE) testified that Dameron would be able to perform jobs such as routing clerk, marker, and router. (Tr. 33).

### III. LEGAL STANDARD

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)), the Fourth Circuit defined "substantial evidence" as follows:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456; *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. DISCUSSION

Dameron argues that the ALJ's decision is not supported by substantial evidence based on three assignments of error. First, Dameron asserts the ALJ's mental RFC determination is not supported by substantial evidence. Specifically, he argues that the ALJ used the wrong legal standard to evaluate the report of Emily Gibbons, his treating psychiatric nurse practitioner, and Ebonyca Arzeez, his now fiancé. Second, Dameron contends that the ALJ failed to account for relevant physical limitations in both the RFC and hypothetical questions to the VE. Third, Dameron argues that the ALJ failed to identify and resolve apparent conflicts between the VE's

testimony and the Dictionary of Occupational Titles (DOT). This Court finds grounds to remand the case based on the ALJ's failure to perform a function-by-function analysis of Dameron's limitations and her failure to resolve apparent conflicts between the VE's testimony and the DOT.[4]

A. The ALJ failed to perform a function-by-function analysis of Dameron's limitations.

Dameron contends that the ALJ erred by failing to provide a logical explanation of how she weighed the record evidence and arrived at the RFC finding. Based on the Fourth Circuit's holdings in *Thomas v. Berryhill*, 916 F.3d 307 (4th Cir. 2019) and *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), the Court agrees.[5]

An ALJ is required to consider all of the claimant's "physical and mental impairments, severe and otherwise, and determine on a function-by-function basis, how they affect [one's] ability to work." *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016). In doing so, the ALJ must provide a "narrative discussion describing how the evidence supports each conclusion." Social Security Regulation ("SSR") 96-8P, 1996 WL 374184 at *7 (July 2, 1996). Once the ALJ has completed this function-by-function analysis, the ALJ can make a finding as to the claimant's RFC. *Thomas*, 916 F.3d at 311. If an ALJ gives too little an explanation for the district court to meaningfully review, it is grounds for reversal. *Id.* at 312 (reversing when "the ALJ's analysis of [claimant's] RFC contain[ed] too little logical explanation for [the court] to conduct meaningful appellate review"); *Mascio*, 780 F.3d at 636 (noting that "remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory

---

[4] The Court does not find it necessary to address Dameron's assertion that the ALJ failed to properly address evidence from his fiancé and treating nurse practitioner since the other two assignments of error are enough to support a remand.

[5] The Court notes that *Thomas* was decided after the ALJ denied Dameron's application.

evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review").

Here, Dameron submitted evidence that his hands shake to a point where he finds it difficult to perform everyday tasks. The ALJ acknowledged that evidence but failed to explain if and how it would affect Dameron's ability to work. *See* Tr. 23 (Dameron claims he has difficulty caring for his hair, shaving, and holding things due to his shaky hands); Tr. 29 ("He stated he had severe shaking, that his doctors told him may be a side effect of medication.") ("The claimant testified that he was unable to work because of his shaking and inability to be around a crowd of people."); Tr. 26 (multiple doctors noting mild tremors); Tr. 27 (doctor reporting that Dameron was "tremulous")). While the most severe complaints about tremors is from Dameron himself, the record also contains evidence from his doctors supporting those complaints, though the tremors may not be as severe as Dameron claims. It may very well be that Dameron's tremors do not affect his ability to work, but when the ALJ provides no explanation as to how Dameron's tremors may or may not affect his ability to work, the Court cannot meaningfully review the ALJ's decision. *See Thomas*, 916 F.3d at 311 ("Indeed, our precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion.") (citing *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018)).

Additionally, the ALJ stated in the RFC that Dameron could not perform work "requiring a production rate or demand pace." (Tr. 24, Finding 4). In *Thomas*, the same phrase was included in the RFC. The Fourth Circuit reversed and remanded in part because the ALJ "did not give [the court] enough information to understand what those terms mean." *Thomas*, 916 F.3d at 312. The lack of information as to what those terms mean "makes it difficult, if not impossible, for [the

court] to assess whether their inclusion in [claimant's] RFC is supported by substantial evidence." *Id.*

Similarly, the Court finds in this case that the lack of explanation for the ALJ's exclusion of Dameron's hand tremors from her analysis and the vague phrase included in the RFC render the Court unable to determine if the ALJ's decision is supported by substantial evidence. The Court expresses no opinion on whether the ALJ's RFC findings were correct. On remand, the ALJ must provide a clearer window into her reasoning.

B. There is an apparent conflict between the VE testimony and the DOT.

Second, Dameron argues that the ALJ failed to identify and resolve apparent conflicts between the VE testimony and the DOT. Both the ALJ's RFC and hypothetical questions limited claimant to "short, simple, not detailed instructions." (Tr. 24, 57). The VE testified that Mr. Dameron could perform three jobs that existed in significant numbers in the national economy: "routing clerk," "marker," and "router." (Tr. 58). According to the DOT, all three jobs require Level 2 reasoning, which, among other things, entails "carry[ing] out detailed but uninvolved written or oral instructions." DOT 222.687-022, 1991 WL 672133; DOT 209.587-034, 1991 WL 671802; DOT 222.587-038, 1991 WL 672123.

At step five, the ALJ's has the burden to show, by a preponderance of the evidence, that other work exists in significant numbers in the national economy that claimant can perform. *See Mascio*, 780 F.3d at 635. "The [ALJ] often seeks to meet this burden through the testimony of a VE." *Thomas*, 916 F.3d at 313. However, the ALJ cannot blindly rely on the VE's testimony. The ALJ has a duty to identify and resolve any apparent conflicts between the DOT and a VE's testimony. *Id.* at 313 (citing SSR 00-4P, 2000 WL 1898704 at *2 (Dec. 4, 2000)). Often, the ALJ will ask the VE whether his or her testimony conflicts with the DOT. If the VE answers "yes," the

7

ALJ "must elicit a reasonable explanation for the conflict before relying" on the VE's evidence to support a decision about whether the claimant is disabled. SSR 00-4P, 2000 WL 1898704 at *2. If the VE answers "no," there remains an affirmative duty on behalf of the ALJ to "make an independent identification of apparent conflicts." *Pearson v. Colvin*, 810 F.3d 204, 210 (4th Cir. 2015). "This means that the ALJ must recognize and resolve ways in which a VE's testimony 'seems to, but does not necessarily,' conflict with the 'express language' of the DOT—even if the conflict is not 'obvious.'" *Thomas*, 916 F.3d at 313 (quoting *Pearson*, 810 F.3d at 209).

Subsequent to the ALJ's decision in this case, the Fourth Circuit held that there is an apparent conflict between a claimant's RFC that limits him or her to jobs involving "short, simple instructions," and Level 2's concept of "detailed but uninvolved instructions." *Thomas*, 916 F.3d at 313-14. All three jobs presented by the VE would require Dameron to perform detailed instructions. However, Dameron's RFC limits him to short, simple, and *not detailed* instructions. (Tr. 24, 57) (emphasis added). Because the ALJ did not resolve this conflict, remand for a new hearing is appropriate so that the ALJ can resolve the conflict in accordance with the Administration's regulations.

## V. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 12) is **GRANTED** in part; Defendant's Motion for Summary Judgment (Doc. No. 15) is **DENIED**; and the Commissioner's decision is **VACATED.** This matter is **REMANDED** for a new hearing pursuant to Sentence Four of 42 U.S.C. § 405(g).[6]

---

[6] Sentence Four authorizes "a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." *Sullivan*, 496 U.S. 617, 625 (1990).

**SO ORDERED.**

Signed: November 20, 2019

Kenneth D. Bell
United States District Judge